UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ALOHA PENCIL COMPANY, LLC<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant. | Court No. 25-cv-102 |

# COMPLAINT

1.    Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Royal Government of Cambodia ("Cambodia"), by and through its counsel, contests the final determination of the Department of Commerce in the countervailing ("CVD") duty investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from the People's Republic of China. The contested determination was published as *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Malaysia and Thailand: Amended Final Countervailing Duty Determinations; Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Countervailing Duty Orders*, 90 Fed. Reg. 26,792 (Dep't of Commerce June 24, 2025) ("*CVD Order*"), incorporating the decisions in *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia: Final Affirmative Countervailing Duty Determination*, 90 Fed. Reg. 17,406 (Dep't of Commerce April 25, 2025) ("*Final Determination*"), and accompanying Final Issues and Decisions Memorandum ("*Final I&D*").

# JURISDICTION

2. Paragraph 1 is re-alleged and incorporated herein by reference.

3. This action challenges certain factual findings, legal conclusions, and determinations in Commerce's *Final Determination* of *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia*, finalized in *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Malaysia and Thailand: Amended Final Countervailing Duty Determinations; Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Countervailing Duty Orders*, 90 Fed. Reg. 26,792 (Dep't of Commerce June 24, 2025). This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. §1516a(a)(2).

4. The standard of review, as provided in 19 U.S.C. §1516a(b)(1)(B), is whether the determinations, findings, or conclusions of the Department were "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

## STANDING

5. Paragraphs 1 to 4 are re-alleged and incorporated herein by reference.

6. Plaintiff Cambodia is a government of a country in which crystalline silicon photovoltaic cells, whether or not assembled into modules is produced or manufactured or from which such merchandise is exported.

7. Plaintiff was a party to and participated in the underlying proceeding.

8. Therefore, Plaintiff is an interested party pursuant to 19 U.S.C. §§ 1516a(f)(3) & 1677(9)(B). Plaintiff thus has standing to commence this action under 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i), 28 U.S.C. §§ 2631(c) & 1581(c).

## TIMELINESS OF THIS ACTION

9. Paragraphs 1 to 8 are re-alleged and incorporated herein by reference.

10. Commerce published the notice of the *Order* in the Federal Register on June 24, 2025. *See Order,* 90 Fed. Reg. at 26,792.

11. RGC commenced this action by filing a summons on July 24, 2025, 30 days after the date of publication of the *Order*.

12. RGC is filing this Complaint on August 22, 2025, within 30 days after the filing of the Summons, as required by Rule 3(a)(2) of the rules of this Court. *See* USCIT R.3(a)(2).

13. This action is therefore timely filed pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II), 28 U.S.C. § 2636(c), and Rule 3(a)(2) and 6(a) of this Court.

## STATEMENT OF FACTS

14. Paragraphs 1 to 13 are re-alleged and incorporated herein by reference.

15. Commerce published a notice initiating the investigation of *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam*. See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 89 Fed. Reg. 43,809 (Dep't of Commerce Jan. 27, 2024) ("*Initiation Notice*").

16. The scope of the investigation specifically excludes solar cells covered by the antidumping (AD) and countervailing duty (CVD) orders on solar cells from China. Commerce found in a circumvention proceeding, that solar cells made from silicon wafers from China "and where more than two of the following components in the module/ laminate/panel were produced in China: (1) silver paste; (2) aluminum frames; (3) glass; (4) backsheets; (5) ethylene vinyl acetate sheets; and (6) junction boxes." *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Scope*

3

*Determination and Final Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419 (Dep't of Commerce Aug. 23, 2023).

17. Because of the scope language and circumvention finding, Commerce instructed parties to respond to a Quantity & Value Questionnaire by excluding as non-subject merchandise any solar cells made from wafers from China:

> Specifically, do not report POI sales of the following:
>
> - Solar cells produced with Chinese wafers in Cambodia, Malaysia, Thailand, or Vietnam, that are not assembled into solar modules.
>
> - Solar modules consisting of solar cells that were produced in Cambodia, Malaysia, Thailand, or Vietnam from wafers produced in China and where more than two of the following components in the solar modules were produced in China: (1) silver paste; (2) aluminum frames (3) glass; (4) backsheets; (5) ethylene vinyl acetate sheets; and (6) junction boxes.
>
> - Solar cells or solar modules that meet the descriptions above, and that are transshipped from Cambodia, Malaysia, Thailand, or Vietnam to the United States through another third country.
>
> - Solar cells completed in Cambodia, Malaysia, Thailand, or Vietnam from a Chinese wafer, and then the solar cells are sent to another inquiry country (Cambodia, Malaysia, Thailand, or Vietnam) for assembly into a solar module with three or more of the Chinese components that are listed in the second bullet point above, and the solar module is then exported to the United States.

18. Commerce selected Solarspace New Energy (Cambodia) Co., Ltd. (f.k.a. L-Q New Energy Co., Ltd.) ("Solarspace"), and Jintek Photovoltaic Technology Co., Ltd. ("Jintek") as mandatory respondents. The Cambodia, for the first time ever, was a mandatory respondent also.

19. Commerce issued a letter with the CVD questionnaire on July 6, 2024, to Cambodia Embassy in Washington, D.C., because Cambodia was not represented by counsel.

20. The cover letter of the questionnaire has 4 pages of instructions, followed by the questionnaire with its 12 additional pages of instructions. Section II of the questionnaire contains requests for information directed at Cambodia, with a deadline of August 9, 2024, to provide a response.

21. Cambodia appeared pro se for most of the investigation, seeking extensions of time as necessary to understand what Commerce was requesting and coordinate responses where there was no experience responding to Commerce requests for information.

22. The original deadline for the initial questionnaire response was August 9, 2025. On August 2, 2025, Cambodia requested a 21-day extension of time ("EOT") until August 30, 2025, to answer the initial questionnaire, but the petitioner opposed, and on August 7, 2025, Commerce only granted a single week to August 16, 2025.

23. Cambodia submitted a second request, on August 14, 2025, this time asking for a two-week extension until August 30, 2025. On August 15, 2025, Commerce granted a 3-day extension, until August 19, 2025, and Cambodia filed what it could as its initial questionnaire response on August 19, 2025.

24. On September 6, 2024, Commerce issued a supplemental questionnaire to Cambodia, with a deadline of September 13, 2024. On September 13, 2024, Cambodia filed a request for a "seven (7)" day extension of time, until September 19, 2025, to respond. Commerce granted only a 5-day extension, until September 18, 2025. On September 18, 2025, the RCG requested an "eleven (11)" day extension to September 28, 2025. Commerce granted a 2-day extension, to September 20, 2024. The RCG filed what it could as its response on September 19, 2024.

25. On September 20, 2024, Commerce issued a supplemental NSA questionnaire (NSA SQR), due September 30, 2024. Seven days after the deadline, on October 7, 2024, the RCG sought a 14-day extension of time to extend the deadline for the NSA SQR to October 14, 2024. The RCG explained that, because of timing differences and the 15-day Festival of Ancestral Respect (with national holidays on October 1-3, and travel before and after those days) in Cambodia, the NSA SQR issued on Friday did not appear on ACCESS until September 24, 2024, in Cambodia, and officials necessary for approval to file submissions (including even procedural EOT submissions) were absent from government offices, preventing an earlier request for extension of time. On October 9, 2025, Commerce denied the extension request on the basis of untimeliness, stating that Cambodia circumstances were not extraordinary.

26. Commerce issued a second supplemental questionnaire to Cambodia on October 11, 2025, asking a single question, whether Cambodia intentionally described the customs duty exemptions for zone investors in special economic zones in a "near identical" manner to the response for similarly named programs for qualified investment projects (QIP) programs. Cambodia confirmed that the programs referred to "the same incentive regime."

27. Commerce issued a second new subsidy allegation questionnaire regarding silver paste and solar glass, uploading the questionnaire to ACCESS at 5:11pm on Tuesday, October 29, 2025, and granting one week, until Tuesday, November 5, 2025, to respond. Cambodia responded timely, explaining that much of the information was "not available," because there no "silver paste industry association" and no applicable silver paste "price control policy" or "state-owned trading companies affiliated with the distribution of both domestic and imported silver paste," and indeed, "no known producers or suppliers." Cambodia provided identical answers regarding the non-existent Cambodian solar glass industry.

28. Commerce issued a verification agenda, choosing only to verify responses related to three Cambodian government ministries: (1) the General Department of Customs and Excise (GDCE), to review customs duty exemptions for QIPs and zone investors in SEZs,; (2) the Council for the Development of Cambodia (CDC) to review the same customs duty exemptions for QIPs plus certain tax exemptions for QIPs and certain activities under the Law on Investment; and (3) the Credit Guarantee Corporation of Cambodia (CGCC), to review two loan guarantee programs. Commerce chose not to verify the responses related to any other programs, including alleged benefits to certain electricity producers and users. Commerce conducted verification of Cambodia January 16, 17, and 20, 2025.

29. In the verification outline, Commerce stated that all information relied upon to prepare the questionnaire responses, "must be available for Commerce to examine," and Commerce included a "request that {Cambodia} file and serve verification exhibits no later than the end of the fifth business day after each verification is completed." Commerce also stated that "{i}f, upon review, Commerce finds that any of the exhibits filed do not match the exhibits that Commerce decided to take during verification, Commerce will notify the submitter and other parties, and will take appropriate steps to address any inconsistencies."

30. During verification, Commerce verifiers took copies of exhibits, and had them when they returned to Washington, D.C.

31. Three weeks after verification of Cambodia concluded, on February 11, 2025, RCG retained counsel.

32. On February 18, 2025, Commerce issued the briefing schedule, attaching a memorandum regarding the "Verification of the Government of Cambodia." In the memo, Commerce stated that it had reminded Cambodia in the verification agenda, verbally during the

7

verification, and via email in the morning on the fifth day after verification concluded reminding Cambodia to file verification exhibits, but that Cambodia had not filed them.

33. Based solely upon verification exhibits not being filed on ACCESS, Commerce found that the questionnaire responses of Cambodia "remain unverified."

34. On February 19, 2025, Cambodia, through counsel, submitted a request for an extension of time to submit the verification exhibits, explaining both the confusion Cambodia experienced during verification about whether there was a continuing need to submit verification exhibits given that Commerce verifiers took copies of the exhibit with them, and confusing statements by Commerce verifiers about verification exhibits during verification.

35. Cambodia, through counsel, explained Cambodia did not have the experience of a large Washington DC law firm with decades of experience with Commerce proceedings; Cambodia was and unrepresented, least-developed country, with no prior experience with Commerce proceedings, and limited English language capabilities.

36. Commerce denied Cambodia request, asserting that the confusion was not an extraordinary event.

37. In its case and rebuttal briefs, Cambodia argued that Commerce should reconsider the denial of Cambodia's request for additional time to submit the verification exhibits.

38. Cambodia also argued that its electricity programs – which Commerce had elected not to verify – were not specific and anyways were not used by the solar industry.

39. Cambodia further argued that ISC Cambodia, which Commerce had identified as an uncooperative mandatory respondent, was a standards-setting body that has nothing to do with the solar industry – as acknowledged by Commerce's own website.

40. Cambodia further challenged Commerce's preliminary determination that a program to exempt import duties on raw materials incorporated into exported finished products was countervailable when Commerce's own regulations make such programs not countervailable when compliance with the export requirement is audited. Cambodia pointed to record evidence of post-entry audits and argued that this program cannot be countervailed.

41. Cambodia also argued that a certain program "business recovery guarantee scheme" is not specific and could not be countervailed.

42. Cambodia argued that the adverse facts available rate of 729.86% was so disconnected from any reality that it is contrary to law. Interested party, BYD America LLC, also submitted arguments contesting the legality of the 729.86% rate.

43. Finally, Cambodia referenced arguments advanced by SolarSpace countering Commerce's decision leading to the rate calculated to countervail alleged cross-border subsidies. In this regard, SolarSpace argued, in rebuttal, that Commerce should not use general data to value silicon wafers given the specific data SolarSpace had submitted.

44. SolarSpace and BYD America both also submitted related arguments contesting the legality of investigating alleged cross-border subsidies. In a connected argument, SolarSpace argued that Commerce cannot countervail among alleged cross-border subsidies, alleged cross-border subsidies attributable solely to non-subject merchandise (that is, merchandise covered by the circumvention finding).

45. In the *Final Determination*, Commerce rejected the arguments advanced by Cambodia, SolarSpace, and BYD America. After Commerce issued the CVD order, Cambodia timely filed its summons and this complaint.

## STATEMENT OF CLAIMS

### Count One

46. Paragraphs 1 to 45 are re-alleged and incorporated herein by reference.

47. Commerce's abused its discretion when it denied Cambodia request for additional time to submit verification exhibits. Cambodia was unrepresented and confused by Commerce's instructions. Further, Commerce ignored time differences when pointing to Commerce's last-minute reminder email to the Cambodian Embassy in Washington, D.C., in the morning of the fifth day. That email arrived after 9 p.m., Cambodia time, far too late for any reminder to have any effect. Thus, Commerce's refusal to grant Cambodia's request for additional time to submit its copy of the verification exhibits was unsupported by substantial evidence and not in harmony with law.

### Count Two

48. Paragraphs 1 to 47 are re-alleged and incorporated herein by reference.

49. Commerce wrongly applied total AFA based upon Cambodia not submitting verification exhibits within five days after the end of verification. Even were Commerce's decision to grant an extension of time lawful, its application of AFA, based solely on Cambodia's inaction with verification exhibits, was unlawful because Cambodia was acting to the best of its ability, and Commerce – which had copies of the verification exhibits – could have eliminated any prejudice to domestic parties by placing Commerce's copy of the verification exhibits on the record. Thus, Commerce's application of AFA was unsupported by substantial evidence and not in harmony with law.

### Count Three

50. Paragraphs 1 to 49 are re-alleged and incorporated herein by reference.

51. Commerce unlawfully countervailed alleged cross-border subsidies. A short time before Commerce initiated the investigation here, it rescinded regulations explaining why it could not countervail cross-border subsidies. Those reasons have not changed, and the statutory and regulatory framework continue not to permit Commerce to countervail alleged cross-border subsidies. Thus, Commerce's countervailing of cross-border subsidies was unsupported by substantial evidence and not in harmony with law.

### Count Four

52. Paragraphs 1 to 51 are re-alleged and incorporated herein by reference.

53. Commerce unlawfully countervailed exempted customs duties on imported raw materials that are incorporated in exported products. Commerce's own regulations explain circumstances when such custom duty exemptions are not countervailable, and the record in this investigation contained sufficient information establishing that those circumstances are satisfied here. Thus, Commerce's countervailing exempted customs duties on imported raw materials used to produce exported finished products was unsupported by substantial evidence and not in harmony with law.

### Count Five

54. Paragraphs 1 to 53 are re-alleged and incorporated herein by reference.

55. Commerce unlawfully countervailed electricity programs that are not countervailable. Record evidence confirmed that certain electricity programs were not or could not be used by the solar industry during the period of investigation. Thus, Commerce's countervailing electricity programs was unsupported by substantial evidence and not in harmony with law.

### Count Six

56.    Paragraphs 1 to 55 are re-alleged and incorporated herein by reference.

57.    Commerce unlawfully countervailed the business recovery guarantee scheme. Cambodia submitted evidence establishing that the business recovery guarantee scheme was not specific and could not be used by the solar industry. Thus, Commerce's countervailing this program was unsupported by substantial evidence and not in harmony with law.

### Count Seven

58.    Paragraphs 1 to 57 are re-alleged and incorporated herein by reference.

59.    Commerce unlawfully ignored information on its own website identifying ISC Cambodia as a standards-setting body, not a solar cell producer. Despite any claim that web address was not properly submitted, Commerce cannot ignore what it demonstrably knows. Thus, Commerce's including ISC Cambodia among parties subject to the investigation was unsupported by substantial evidence and not in harmony with law.

### Count Eight

60.    Paragraphs 1 to 59 are re-alleged and incorporated herein by reference.

61.    The total AFA rates are unlawfully high. Despite arguments presented by Cambodia and BYD Americas that the 729.86% preliminary AFA rate was unlawfully high, Commerce quintupled down, setting the final AFA rate at an unbelievable 3,403.96% -- multiples higher than the highest AFA rates ever previously calculated by Commerce. Commerce abandoned all reason in setting this AFA rate, which is so disconnected from reality that the sole justification can only have been unlawful punishment. Thus, Commerce's selection of the AFA rate was unsupported by substantial evidence and not in harmony with law.

## **PRAYER FOR RELIEF AND JUDGMENT**

For the reasons stated above, Cambodia respectfully requests that the Court:

(a) enter judgment in Cambodia's favor;

(b) declare that with respect to the issues raised in this Complaint, Commerce's determinations and all related findings and conclusions are unsupported by substantial evidence on the record or are otherwise not in accordance with law;

(c) remand this matter to Commerce for redetermination consistent with the Court's opinion; and

(d) provide such other relief as the Court deems just and proper.

                                        Respectfully submitted,

                                        /s/Mark B. Lehnardt
                                        Davis & Leiman
                                        1012 Connecticut Ave., N.W., #1012
                                        Washington, D.C. 20036
                                        T. 202.642.4850

Dated: August 22, 2025                  *Counsel to Plaintiff*